UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

QUINCY YOUNG #455607          CIVIL ACTION NO. 19-cv-619 SEC P

VERSUS          CHIEF JUDGE HICKS

KEITH DEVILLE          MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

Quincy Young ("Petitioner") was charged with armed robbery and was subject to being charged as a multiple offender. Petitioner accepted a plea bargain and entered a plea of guilty to armed robbery. The prosecutor agreed not to seek a multiple offender bill and recommended a 35-year sentence. The judge accepted the plea and imposed the recommended 35-year sentence.

Petitioner filed a post-conviction application in state court and asked that his conviction be set aside because (1) counsel rendered ineffective assistance when he did not request the appointment of a sanity commission and (2) the trial court violated Petitioner's right to counsel of his choice when he asked to fire his attorney on the day trial was to commence. The state court denied the claims, and he now seeks federal habeas relief on the same grounds.[1] For the reasons that follow, it is recommended that the petition be denied.

---

[1] Petitioner also asserted a claim of excessive sentence, but he voluntarily dismissed that unexhausted claim. Doc. 6.

**Relevant Facts**

Petitioner was charged with armed robbery. He appeared in court for trial represented by retained counsel, Edward Mouton, who noted that the case was "number one on the trial docket today." Mr. Mouton and the prosecutor represented to the court that a plea offer from the State would allow Petitioner to plead guilty to armed robbery with a handgun, the State would seek a second but not a third felony habitual offender bill, and sentencing would be up to the court. Judge Katherine Dorroh explained that the range of sentencing would be 49.5 years to 199 years. Mr. Mouton stated that he had gone to the jail the past weekend and "spoke at great length" with Petitioner and his family, and it was his recommendation that Petitioner accept the plea offer.

Petitioner asked if there was "any way possible that I can make an offer of 10 years right now and get it over with." He said he wanted to be able to see his kids through school and, "This will be my third time always copping out in the court, because you don't want to sit in jail." The judge told Petitioner that a jury was coming at 10:30 a.m., and he could either accept the plea offer or start the trial. Petitioner then asked about the presentence investigation report, and counsel explained that process. After further discussion, the following exchange took place:

| | |
|---|---|
| The Defendant: | In this whole situation, I feel like I'm not properly represented. |
| The Court: | Ok. |
| The Defendant: | So I would like to dismiss Mouton on this. |

| | |
|---|---|
| The Court: | We are not going to dismiss anybody. We are set for jury trial this morning. We are set for jury trial. We do not dismiss an attorney on the day of jury trial. |
| The Defendant: | He's not - - |
| The Court: | Ok. Mr. Young, have a seat. |

The court then took up some other matters before returning to Petitioner's case. During that time, Defense counsel apparently prevailed upon the prosecution to sweeten the offer. The prosecutor announced that the State would agree to Petitioner pleading guilty to armed robbery (without a multiple offender enhancement) with a sentence recommendation of 35 years. The prosecutor explained that the State was willing to offer the deal and forego a multiple offender enhancement because the prior convictions for simple burglary and DWI-third were not violent. After some discussion, and clarification that the sentence was without probation or parole, Petitioner stated, "I'll accept the offer."

The court then questioned Petitioner about his education. He stated that he completed the 11th grade. Other materials in the record indicate that this was perhaps special education. He said he could speak the English language. When asked if he could read, he said, "I can probably understand a paragraph but not, I mean, a report, no." Petitioner stated that he was not under the influence of any drugs, alcohol, or medication. He waived his Boykin rights and stated that he recognized that he faced a sentence under the armed robbery statute of 10 to 99 years without benefits. The court advised that by pleading guilty he waived his right to an appeal. Petitioner had a question about that issue, and he said that he understood the court's explanation. This colloquy then ensued:

| | |
|---|---|
| The Court: | Has anyone promised you anything other than what has been stated here on the record and in open court? |
| The Defendant: | He got hired to get two and a half, four years out. Mouton told me I would do two years in and four years out on paper. |
| Mr. Mouton: | Your honor, that is not my communication to the defendant. I stated the offer as - - |
| The Defendant: | That's how he got hired. |
| Mr. Mouton: | - - told to me by the State. |
| The Court: | Mr. Young, has anyone promised you anything other than what was stated on the record here in open court this morning? |
| The Defendant: | No, ma'am. |

The prosecutor then recited the factual basis. Video surveillance at the Days Inn on Monkhouse Drive showed that Petitioner entered and waited for a customer to leave. He then produced a small, semiautomatic handgun, pointed it at the female clerk, and demanded the whole tray of money. He fled the scene. A Crime Stoppers tip led to information that Petitioner was the robber. He was apprehended, and his vehicle matched the exact description of the robber's vehicle. The weapon was found in the grass near the vehicle. The approximately $800 that was stolen was not recovered. Petitioner was asked if these facts were correct, and he answered, "Yes, ma'am." The court specifically found that Petitioner entered a plea that was "made knowingly and intelligently" and was "a voluntary waiver of the Defendant's Constitutional rights." The court imposed the recommended 35-year sentence.

**Ineffective Assistance of Counsel**

    **A. State Court Proceedings**

Petitioner argued in his post-conviction application that defense counsel rendered ineffective assistance because he did not move for appointment of a sanity commission. He made the related arguments that counsel should have entered a plea of not guilty by reason of insanity and asked for a determination of whether Petitioner was mentally competent to assist in his defense.

Petitioner submitted a report from a Bossier Parish jail that reflected that he did not express any thoughts of suicide at booking for public intoxication and resisting arrest, but he was soon moved to a different housing area "for suicide attempt" that is not explained in the records. Tr. 160-68. The date of that entry was February 19, 2013, and the armed robbery at issue was committed on March 25, 2013.

Petitioner also submitted a 2012 report from a physician that noted Petitioner requested Prozac and to be seen by a psychiatrist. The examination showed him to be anxious and agitated, but he was not actively hallucinating or combative. His thought content was paranoid but not delusional, and he did not express impulsivity or inappropriate judgment. He expressed no homicidal or suicidal ideation. Tr. 114-15. A psychiatric evaluation written a few days later indicated the Petitioner had alcohol abuse issues and complained of depression since age 15. He reported a suicide attempt in jail at age 16. The report noted that he completed 11th grade and special education classes. He was depressed, but he had no hallucinations and his thought process was linear and organized. There was no history of inpatient hospitalization Tr. 116-19.

Petitioner submitted an affidavit from his mother, who stated that she told attorney Mouton about Petitioner's "mental history and that he was taking lortabs for back pain." Tr. 148. The State submitted an affidavit from attorney Mouton who said he was "familiar with the medical history" of Petitioner and that, based on his years of experience practicing in Caddo Parish, he did not believe the case could have been won before a judge or a jury. He also did not believe there was a sufficient medical basis to prove insanity or question competence, so requesting a sanity commission would not have been effective. Counsel stated that he was able to get the prosecutor to reinstate an earlier offer of 35 years and not multi-bill Petitioner. Tr. 280-81.

**B. Analysis**

Petitioner argues that his trial counsel was ineffective because he did not enter a plea of not guilty by reason of insanity and did not request a sanity commission to explore the issues of sanity at the time the crime was committed and competence to stand trial. Petitioner raised this claim in his post-conviction application. The trial court rejected it based on a finding that Petitioner "fails to establish that he suffers from a mental condition" and that the medical records he submitted "do not support Petitioner's conclusions that a sanity commission should have been appointed." "Even assuming he suffered from a mental condition, Petitioner fails to prove that his trial counsel did not investigate this possible defense and determine that such a defense would be futile." Tr. 283. The state appellate and supreme courts summarily denied writ applications for failure to meet the post-conviction application burden. Tr. 327, 368-69.

Petitioner's guilty plea bars habeas relief on this claim. "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollette v. Henderson, 93 S.Ct. 1602, 1608 (1973). "He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards" for effective assistance of counsel. Id. Tollette explained that a guilty plea may not be vacated because the defendant was not advised "of every conceivable constitutional plea in abatement he might have to the charge," and it was not sufficient to show that if counsel had pursued a certain inquiry it would have uncovered a possible defense. Id.

The Fifth Circuit has said that it is "well-established that a valid guilty plea waives all non-jurisdictional defects, including an ineffective assistance of counsel claim, unless the ineffective assistance claim affects the voluntariness of the plea." Wells v. Thaler, 460 Fed. Appx. 303, 309 (5th Cir. 2012), citing Smith v. Estelle, 711 F.2d 677, 682 (5th Cir. 1983) (claims of ineffective assistance of counsel for failure to review evidence, investigate witnesses or legality of arrest, and failure to find flaws in the prosecution's case were waived by guilty plea). Another example is Brown v. Jernigan, 622 F.2d 914, 916 (5th Cir. 1980), where the habeas petitioner claimed that his indictment was improperly dated and signed and was returned by less than a full panel of grand jury members. The Fifth Circuit ruled that he waived any such defects in the indictment when he pleaded guilty. Claims for failure to file pretrial motions, failure to interview witnesses, failure to investigate and

the like have all been denied when the complaining petitioner had entered a valid guilty plea. Magallanes v. Scott, 43 F.3d 670 (5th Cir. 1994); Drake v. Davis, 2017 WL 3841198, *4 (N.D. Tex. 2017).

Petitioner entered a guilty plea, so he is not entitled to habeas relief on the claims that his attorney should have raised a sanity defense. If a defendant wishes to challenge the prosecution's case, he may go to trial and do so. But if he chooses to plead guilty, he waives his right to continue to litigate matters such as whether he had a valid insanity defense.

Petitioner may attack the voluntary and intelligent character of his guilty plea by showing that the advice he received from counsel was not within the standards for effective assistance, but Petitioner has not demonstrated that any advice he received rendered his plea involuntary or unintelligent. The record shows that attorney Mouton spent time with Petitioner and his family the weekend before the plea was entered, advising him about the strength of the prosecution's case and the merits of a proposed plea bargain. During the plea hearing, Mouton continued to give advice regarding matters such as the presentence investigation report and the availability of parole or other diminution of sentence. The trial court made a specific factual finding that the plea was voluntarily and intelligently entered.

Petitioner has not made a specific argument that he lacked the competence to enter a voluntary and intelligent plea, but he generally argues that counsel should have explored his competence. The test for competency is whether a defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him."

Dusky v. U.S., 362 U.S. 402 (1960) (internal quotation marks omitted) and U.S. v. Fields, 761 F.3d 443, 467 (5th Cir. 2014). Petitioner's questions and answers at the plea hearing indicate that he lacked formal education but was more than competent enough to understand the charges against him and the proceedings.

The medical records submitted by Petitioner indicate that he has some history of mental health concerns, but the only mental health medications mentioned were Prozac and Vistaril, both used to treat anxiety or depression. The records indicated two suicide attempts while incarcerated, but no additional details were provided. There is no indication that Petitioner ever received inpatient care for psychiatric or other mental health needs. The state court's acceptance of the plea and rejection of the Strickland claim amount to at least implicit findings that Petitioner was competent to enter a valid guilty plea. Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court, with respect to a factual challenge, only if the adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). The record supports the state court's adjudication of these issues, and there is no basis to hold that the decision was unreasonable in light of the available evidence. Habeas corpus relief must be denied with respect to the ineffective assistance of counsel claims.

**Request to Dismiss Counsel**

    **A. Counsel of Choice**

Petitioner complains that the trial court violated his right to counsel of his choice when it denied his request to fire attorney Mouton. An element of the Sixth Amendment

right to counsel is "the right of a defendant who does not require appointed counsel to choose who will represent him." United States v. Gonzalez-Lopez, 126 S. Ct. 2557, 2561 (2006). A defendant has the "right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." Caplin & Drysdale, Chartered v. United States, 109 S.Ct. 2646, 2652 (1989). If the right is wrongly denied, it is unnecessary to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation. Gonzalez-Lopez, 126 S. Ct. at 2564-65.

But the right is not absolute. Gonzalez-Lopez stated that nothing in its decision "casts any doubt or places any qualification upon our previous holdings that limit the right to counsel of choice.... We have recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar. The court has, moreover, an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Id. at 2565-66.

The attorneys and the judge mentioned more than once that this case was first on the docket for trial, and the judge noted that a jury was waiting and ready to commence a trial that morning. When Petitioner stated that he would like to dismiss his attorney, the court refused to allow it because the trial was about to begin. When Petitioner renewed the issue in his post-conviction application, the state court observed that, under state law, once the trial date has arrived the question of withdrawal of counsel rests with the discretion of the trial judge that is subject to review only for abuse of discretion. Tr. 284, citing State v.

Morris, 917 So.2d 745 (La. App. 2d Cir. 2005). The court found that Petitioner did not show that the court abused its discretion in denying a request for new counsel when the trial was set to commence and he gave no justifiable basis for the request in the courtroom or in his application. Tr. 284. The appellate and supreme courts summarily denied writ applications for failure to meet the post-conviction application burden. Tr. 327, 368-69.

    Habeas corpus relief is available on this claim, which was adjudicated on the merits in state court, only if the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court. 28 U.S.C. § 2254(d). A state court's decision is contrary to clearly established Supreme Court precedent when it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts. Williams v. Taylor, 120 S.Ct. 1495, 1519-20 (2000). A state court makes an unreasonable application of clearly established federal law when it identifies the correct governing legal principle from the Supreme Court's decisions but applies it to the facts in a way that is not only incorrect but objectively unreasonable. Renico v. Lett, 130 S.Ct. 1855, 1862 (2010). When a state court has denied a claim on the merits, the AEDPA bars habeas relief unless the prisoner shows that the state court "erred so transparently that no fairminded jurist could agree with that court's decision." Bobby v. Dixon, 132 S.Ct. 26, 27 (2011) (per curiam).

    The state court's rejection of this claim was a reasonable application of Gonzales-Lopez and other clearly established precedent. Federal courts have applied the principles to reject similar last-minute requests for change of counsel. An example is U.S. v. Jones,

733 F.3rd 574 (5th Cir. 2013), which affirmed the denial of a motion to substitute that came 13 days before trial and would have required a continuance of a complicated trial and might have compromised the availability of a key witness. See also U.S. v Contreras, 558 Fed. Appx. 400 (5th Cir. 2014) (district judge did not abuse discretion in denying late request to change counsel) and U.S. v. Villalobos, 2014 WL 4402829 (W.D. Tex. 2014) (late motion to change counsel denied when it would require continuance and inconvenience witnesses who had traveled to testify). The state court's denial of this post-conviction claim was not an objectively unreasonable application of clearly established federal law, so habeas relief is not permitted.

### B. No Advice Regarding Self-Representation

Petitioner argued in his habeas memorandum that the trial court erred by not clarifying whether Petitioner wished to represent himself. In his reply (Doc. 12), Petitioner faults both the trial court and counsel for not advising him that he could represent himself after his request to fire his attorney was denied. When Petitioner presented a similar claim in his post-conviction application, the state court denial did not specifically address this issue. The state appellate and supreme courts denied writ applications with reference to Petitioner not satisfying his burden. Tr. 327, 368-69.

A defendant in a criminal case has a right to counsel, and he also has a right to represent himself at trial. If he wishes to waive his right to counsel, he must clearly and unequivocally ask to represent himself. Petitioner did not make such a clear and unequivocal request. He merely stated that he "would like to dismiss Mouton on this." "Many cases suggest that something more than just firing one's attorney is required before

one clearly and unequivocally requests to proceed pro se." U.S. v. Long, 597 F.3d 720, 724 (5th Cir. 2010). See also Moreno v. Estelle, 717 F.2d 171, 174-75 (5th Cir. 1983) (habeas petitioner did not waive right to counsel merely by telling court he wished his attorney to withdraw because "I feel she isn't helping me," "I can't get her to do anything," and "I don't want her.") and Castillo v. Stephens, 2014 WL 6090411, *38 (W.D. Tex. 2014) (collecting cases). Absent a clear and unequivocal request for self-representation, the trial court had no constitutional obligation to advise him regarding that right. The denial of this post-conviction claim was entirely reasonable and not inconsistent with any clearly established federal law as decided by the Supreme Court.

Accordingly,

It is recommended that Petitioner's petition for writ of habeas corpus be denied.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to

proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 19th day of April, 2022.

Mark L. Hornsby
U.S. Magistrate Judge